UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIEGO PORTOCARRERO-VALENCIA,

                             Petitioner,

    - against -

WARDEN, FCI OTISVILLE,

                             Respondent.
-------------------------------------------------------------x

**OPINION & ORDER**

No. 24-CV-6413 (CS)

Appearances:

Diego Portocarrero-Valencia
Otisville, New York
*Pro Se Petitioner*

Joseph A. Pantoja
Assistant United States Attorney
New York, New York
*Counsel for Respondent*

Seibel, J.

       Before the Court is the Petition of Diego Portocarrero-Valencia ("Petitioner") for a writ

of *habeas corpus* pursuant to 28 U.S.C. § 2241, (ECF No. 1 ("Pet.")).  For the following reasons,

the Petition is DENIED.

I.      **BACKGROUND**

     A.     **Factual and Procedural Background**

       On August 4, 2017, the United States District Court for the Southern District of Florida

sentenced Petitioner to concurrent terms of ten years' imprisonment, to be followed by five

years' supervised release, for his convictions for (1) conspiracy to possess with intent to

distribute more than five kilograms of cocaine while on board a vessel subject to the jurisdiction

of the United States, in violation of 46 U.S.C. § 70506(b), and (2) possession with intent to

distribute more than five kilograms of cocaine while on board a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. § 70503(a).  (ECF No. 8-1.)  Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") in Otisville, New York, (Pet. at 1; ECF No. 8 ("Lewis Decl.") ¶ 5),[1] and is scheduled to be released on June 2, 2025, (Lewis Decl. ¶ 16).

On December 28, 2023, United States Immigration and Customs Enforcement ("ICE") issued a Notice and Order of Expedited Removal ("NOER"), which determined Petitioner to be inadmissible under § 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA").  (ECF No. 8-2.)  On December 29, 2023, the United States Department of Homeland Security ("DHS") issued an immigration detainer to FCI Otisville so that DHS could assume custody of Petitioner prior to any release from the Bureau of Prisons ("BOP").  (Lewis Decl. ¶ 7; ECF No. 8-3.)

On August 26, 2024, citing both the Fifth and Fourteenth Amendments, Petitioner filed the instant Petition alleging that the BOP has acted "illegally" by failing to credit Petitioner's earned time credits ("ETCs") under the First Step Act of 2018 ("FSA"), thereby violating both the FSA and his due process rights under the United States Constitution.  (*See* Pet. at 2-3, 9.)  He asks the Court to direct the BOP to apply his FSA ETCs and recalculate his release date.  (*Id.* at 11.)

Petitioner states that he sought an informal resolution on May 22, 2024, which was effectively denied as unanswered, (*id.* at 3), and that his subsequent appeal to the Warden at FCI Otisville on May 29, 2024, was rejected, (*id.* at 5).  Petitioner attached to the Petition a copy of his informal resolution form, in which he stated that his FSA status is marked as ineligible based

---

[1] Citations to the Petition use the page numbers set by the Court's Electronic Case Filing ("ECF") system.

on a final order of removal, but that that status is incorrect because he never received a final order of removal resulting from a hearing before an immigration judge. (*Id.* at 15-17.) He requested that the BOP "provide [him] with the supposed 'Final Order of Removal' or in the case that they cannot do so, correct [his] FSA status to eligible and apply [his] time credits." (*Id.* at 17.) He also attached a notice dated May 29, 2024, that states his administrative remedy request was rejected because Petitioner did not attempt informal resolution before submitting the request or failed to provide the required evidence of such an attempt. (*Id.* at 18.)

On November 8, 2024, the Government filed a response in opposition to the Petition, (ECF No. 7 ("Opp.")), along with a declaration from Nicole T. Lewis, a legal assistant employed by the BOP, (Lewis Decl.), attached to which are copies of the Criminal Judgment, the NOER, the DHS immigration detainer, the BOP administrative remedy records for Petitioner, and Petitioner's public information inmate data, (ECF Nos. 8-1 – 8-5). On January 17, 2025, Petitioner filed a reply in support of the Petition, (ECF No. 9 ("Reply")).

B.    **The First Step Act**

Under the FSA, if an eligible inmate in BOP custody successfully participates in Evidence-Based Recidivism Reduction ("EBRR") programs or Productive Activities ("PAs"), the inmate may receive ETCs to be applied, in certain circumstances, toward transfer to prelease custody or supervised release earlier than originally calculated. *See Miller v. Warden*, No. 24-CV-1500, 2025 WL 401154, at *1 (D. Conn. Jan. 14, 2025) (citing 18 U.S.C. §§ 3632(d)(4)(A), (C)); 18 U.S.C. § 3624(g)(2), (3).[2] EBRR programs are defined as activities that research has shown as "likely to be effective in reducing recidivism," 18 U.S.C. § 3635(3)(A), and "designed

---

[2] The Court will send Petitioner copies of the unreported decisions cited in this Opinion and Order.

to help prisoners succeed in their communities upon release from prison," *id.* § 3635(3)(B).  PAs

are defined as activities that are "designed to allow prisoners determined as having a minimum

or low risk of recidivating to remain productive" and maintain their minimum or low risk status.

*Id.* § 3635(5).  "Notably, a prisoner 'subject [to] a final order of removal under any provision of

the immigration laws' is not eligible to apply FSA time credits towards pre-release custody or

supervised release."  *Harriot v. Jamison*, No. 24-CV-208, 2024 WL 2981150, at *1 (S.D.N.Y.

June 13, 2024) (quoting 18 U.S.C. § 3632(d)(4)(E)(i)), *report and recommendation adopted*,

2025 WL 384556 (S.D.N.Y. Feb. 4, 2025); *see United States v. Alvarez Rivera*, No. 22-CR-476,

2024 WL 4534138, at *1 (E.D.N.Y. Oct. 21, 2024); 28 C.F.R. § 523.44(a)(2).[3]

## II.    LEGAL STANDARDS

### A.    *Habeas Corpus* Relief Under 28 U.S.C. § 2241

*Habeas corpus* relief under 28 U.S.C. § 2241 is available to individuals "in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

The Court has the authority to review a petition for a writ of *habeas corpus* and "award the writ

or issue an order directing the respondent to show cause why the writ should not be granted,

unless it appears from the application that the applicant or person detained is not entitled [to such

relief]."  *Id.* § 2243.  A petition for a writ of *habeas corpus* under § 2241 allows a federal inmate

to challenge the "execution of his sentence" after conviction, rather than the imposition of the

sentence itself.  *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001).

Execution of a sentence may include "such matters as the administration of parole, computation

of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

detention and prison conditions." *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001); *see Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) ("Execution of a sentence includes matters such as . . . computation of a prisoner's sentence by prison officials"); *Chi v. Fernandez*, No. 18-CV-1212, 2019 WL 6894837, at *4 (N.D.N.Y. Dec. 18, 2019) ("Execution of a sentence includes, among other things, . . . loss of [good time credit], and the computation of the sentence . . . ."). "The petitioner 'bears the burden of proving that he is being held contrary to law'" and "'the petitioner must satisfy his burden of proof by a preponderance of the evidence.'" *Harriot*, 2024 WL 2981150, at *2 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011)).

### B. *Pro se* **Litigants**

Submissions by *pro se* litigants are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994); *see Hardaway v. Hartford Pub. Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *see Lithgow v. Keyser*, No. 20-CV-3655, 2021 WL 4200722, at *2 (S.D.N.Y. Aug. 16, 2021) (construing *habeas* petition liberally in light of special solicitude due to *pro se* litigants), *report and recommendation adopted*, 2021 WL 4391122 (S.D.N.Y. Sept. 24, 2021). Nevertheless, "threadbare recitals" and "mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010).

### III.    **DISCUSSION**

The Government contends that the Court should deny the Petition because (1) Petitioner failed to exhaust his administrative remedies, (2) even if the exhaustion requirement is waived,

Petitioner is ineligible to apply ETCs toward prelease custody or supervised release because he is subject to a final order of removal under immigration laws, and (3) there is no due process right to early release before a valid sentence expires.  (*See* Opp. at 1, 7-11.)

## A.    Exhaustion of Administrative Remedies

Before filing a petition for a writ of *habeas corpus* under 28 U.S.C. § 2241, federal inmates must exhaust their administrative remedies.  *Carmona*, 243 F.3d at 634; *see Lesane v. Tellez*, No. 21-CV-2074, 2021 WL 3500916, at *2 (S.D.N.Y. Aug. 4, 2021) ("Although § 2241 does not expressly require exhaustion of administrative remedies, in this Circuit, exhaustion of administrative remedies is generally a prerequisite to *habeas corpus* relief under § 2241.").  "The exhaustion requirement protects the authority of administrative agencies, limits interference in agency affairs, develops the factual record to make judicial review more efficient, and resolves issues to render judicial review unnecessary."  *Rosenthal v. Killian*, 667 F. Supp. 2d 364, 366 (S.D.N.Y. 2009).  "Failure to exhaust administrative remedies results in a procedural default, which bars judicial review unless the petitioner persuades the Court that the failure to exhaust should be excused."  *Id.*; *see Zucker v. Menifee*, No. 03-CV-10077, 2004 WL 102779, at *4 (S.D.N.Y. Jan. 21, 2004) ("[T]he exhaustion requirement for § 2241 petitions is prudential, not statutory, unlike *habeas corpus* petitions filed pursuant to 28 U.S.C. § 2254.  Therefore, [Petitioner's] failure to exhaust may be excused at the court's discretion.").  "Defendant[] bear[s] the burden of proof with regard to exhaustion, and prisoner plaintiffs need not plead exhaustion with particularity."  *Harriot*, 2024 WL 2981150, at *2.  Courts may excuse a *habeas* petitioner's failure to exhaust administrative remedies where "'(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a petitioner has

raised a substantial constitutional question.'" *Id.* (quoting *Beharry v. Ashcroft*, 329 F.3d 51, 62 (2d Cir. 2003)); *see Martinez-Brooks v. Easter*, 459 F. Supp. 3d 411, 437 (D. Conn. 2020) ("Those exceptions [to § 2241's exhaustion requirement] include futility . . . incapability . . . and undue prejudice."); *Rosenthal*, 667 F. Supp. 2d at 366 ("A court can excuse a failure to exhaust administrative remedies when such exhaustion would be futile or where the agency has predetermined the issue before it.").

     Here, the relevant administrative procedures are provided by the BOP's Administrative Remedy Program ("ARP"), through which an inmate may "seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a); *see Harriot*, 2024 WL 2981150, at *2 ("The administrative remedy available to a federal prisoner is the BOP's [ARP]."); *Rosenthal*, 667 F. Supp. 2d at 366 ("Federal inmates who seek to challenge the conditions of their confinement must first utilize the [ARP] developed by the BOP."). Inmates must complete each of the following four steps in the ARP:

> [T]he prisoner must first raise the matter informally with the prison staff ("BP-8"). *Id.* § 542.13(a). If the matter is not resolved informally, he must then submit a written Administrative Remedy Request ("BP-9") to the warden of his prison. *Id.* § 542.14(a). If the warden rejects the request, the prisoner next must submit an appeal ("BP-10") to the BOP Regional Director. *Id.* § 542.15(a). . . . Finally, if the Regional Director rejects the appeal, the prisoner must appeal to the BOP Office of General Counsel, Central Office ("BP-11"). *Id.* § 542.15(a).

*Harriot*, 2024 WL 2981150, at *2; *see Rosenthal*, 667 F. Supp. 2d at 366 (to the same effect). The regulations provide that "[t]he deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request, on the appropriate form (BP-9), is 20 calendar days following the date on which the basis for the Request occurred." 28 C.F.R. § 542.14(a). The Warden must respond within twenty calendar days, which may be extended once by an additional twenty days if necessary. *See id.* § 542.18. An inmate who is dissatisfied

with the Warden's response must submit his BP-10 "within 20 calendar days of the date the Warden signed the response," *id.* § 542.15(a), and it must be "accompanied by one complete copy or duplicate original of the institution Request and response," *id.* § 542.15(b)(1).  The BOP Regional Director must respond to the BP-10 within thirty calendar days, which may be extended once by an additional thirty days if necessary.  *See id.* § 542.18.  If the inmate seeks to appeal the Regional Director's response, he must submit his BP-11 "within 30 calendar days of the date the Regional Director signed the response," *id.* § 542.15(a), which must be "accompanied by one complete copy or duplicate original of the institution and regional filings and their responses," *id.* § 542.15(b)(1).[4]  The BOP General Counsel must respond to the BP-11 within forty calendar days, which may be extended once by an additional twenty days if necessary.  *See id.* § 542.18.  "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."  *Id.*

BOP records reflect that Petitioner initially filed a BP-9 on April 30, 2024, and it was rejected on the ground that he had not first attempted an informal resolution through a BP-8 submission.  (Lewis Decl. ¶ 15; ECF No. 8-4 at 2.)  The BOP records also indicate that the Warden received a second BP-9 from Petitioner on May 29, 2024, (ECF No. 8-4 at 2), and it was rejected on the ground that Petitioner either did not attempt an informal resolution or did not include a copy of his BP-8 evidencing that he had done so, (Lewis Decl. ¶ 15; Pet. at 18).[5]

---

[4] An inmate's times to submit his BP-9, BP-10, and BP-11 forms may be extended "[w]here the inmate demonstrates a valid reason for [the] delay."  28 U.S.C. § 542.14(b); *see id.* § 542.15(a).

[5] The scan attached to the Petition is difficult to read, but it is discernable that the Administrative Remedy Coordinator at FCI Otisville rejected the request and noted that Petitioner "did not attempt informal resolution" or "did not provide the necessary evidence of [his] attempt at informal resolution" with his BP-9.  (Pet. at 18.)  The rejection did not explain

Petitioner did not pursue any other administrative remedies under the ARP, (*see* Lewis Decl. ¶ 15; ECF No. 8-4 at 2), and he does not explain why he did not comply with that process. "[U]ntil the BOP's Central Office considers the appeal, no administrative remedy is considered to be fully exhausted." *Chi*, 2019 WL 6894837, at *6. Thus, it is undisputed that Petitioner failed to fully exhaust his administrative remedies.

In his reply, Petitioner argues for the first time that he should be excused from the administrative exhaustion requirement because "go[ing] through the process (60 days with extension) would waste a significant amount of time which is to the detriment of Petitioner's liberty interest" because the BOP "illegally removing" his FSA ETCs has caused Petitioner to be "incarcerated beyond his sentence." (Reply at 2-3.)[6] Specifically, he argues that he "has earned enough ETC which should have ensured his release to ICE custody." (*Id.* at 2.) While "courts typically do not allow new arguments to be made in a reply brief, and this rule applies in the context of *habeas* petitions," if Petitioner's "FSA credits would entitle [him] to immediate release . . . then it may be appropriate to consider the FSA claim at this time." *Lallave v. Martinez*, 609 F. Supp. 3d 164, 182 (E.D.N.Y. 2022), *reconsideration denied*, 635 F. Supp. 3d 173 (Oct. 13, 2022). Put another way, if Petitioner is correct that the BOP has improperly denied his FSA ETCs, then "exhaustion for this claim could be excused on the basis of irreparable harm." *Id.* (collecting cases); *see Harriot*, 2024 WL 2981150, at *3 (to the same effect);

---

why attachment of a BP-8 was required, nor has the Government done so in opposition to the Petition. The applicable regulation, 28 C.F.R. § 542.14, contains no such requirement. It appears, contrary to the Government's position, (ECF No. 7 at 7), that Petitioner did attempt informal resolution, as he attaches a BP-8 form to the Petition, and it appears to have been signed as received by Petitioner's correctional counselor on May 22, 2024. (*See* Pet. at 15-17.) The seemingly erroneous rejection of Petitioner's second BP-9, however, does not affect my disposition.

[6] Citations to Petitioner's Reply use the page numbers set by the Court's ECF system.

*Murillo-Cabezas v. F.C.I. Otisville Warden*, No. 23-CV-11329, 2024 WL 3638331, at *2

(S.D.N.Y. Aug. 2, 2024) (noting that "courts have been divided on this issue" but assuming

irreparable injury because petitioner claimed he was entitled to immediate release). *But see*

*Cohen v. United States*, No. 20-CV-10833, 2021 WL 1549917, at *3 (S.D.N.Y. Apr. 20, 2021)

(denying petition for failure to exhaust where, even if case delayed, FSA ETCs could be applied

to supervised release).[7]

Here, assuming no application of FSA ETCs, Petitioner is scheduled to be released on

June 2, 2025.  (Lewis Decl. ¶ 16.)  The parties have not provided a calculation of Petitioner's

potential accrued FSA credits that could be applied to Petitioner's sentence if he were to succeed

on the merits, but in light of the fact that his release date, according to BOP, is in less than four

months, he might well be entitled to immediate relief from incarceration if he were to prevail.  I

therefore conclude that Petitioner should be excused from the administrative exhaustion

requirement and that the Petition should be resolved on the merits.  *See Murillo-Cabezas*, 2024

WL 3638331, at *2 ("[T]his Court assumes, without deciding, that irreparable injury may occur

without immediate judicial relief in this case."); *Harriot*, 2024 WL 2981150, at *4 (excusing

failure to exhaust and deciding *habeas* petition on the merits); *Rubinov v. Pliler*, No. 21-CV-

4397, 2021 WL 5567826, at *5 (S.D.N.Y. Nov. 29, 2021) ("If Petitioner is correct on the merits

of his claim and the BOP should have applied the FSA time credits he claims he has earned,

Petitioner is currently being imprisoned when in fact he should not be.").

**B.**     **FSA**

---

[7] A prisoner like Petitioner, who is subject to an immigration detainer and has been
determined by ICE to be inadmissible to the United States, is unlikely to ever be released to
supervised release, although the credits could be applied to reduce the period during which a
term of supervised release would be in effect.

As stated earlier, an inmate in BOP custody is ineligible to receive FSA ETCs "if the prisoner is the subject of a final order of removal under any provision of the immigration laws (as such term is defined in section 101(a)(17) of the [INA] (8 U.S.C. [§] 1101(a)(17)))."  18 U.S.C. § 3632(d)(4)(E)(i); *see, e.g.*, *Harriot*, 2025 WL 384556, at *3; *Peguero-Carela v. Jaimison*, No. 23-CV-4025, 2024 WL 5301443, at *2 (S.D.N.Y. Sept. 18, 2024), *report and recommendation adopted*, 2025 WL 50017 (S.D.N.Y. Jan. 8, 2025); *Batioja Cuero v. Warden*, *FCI Berlin*, No. 23-CV-65, 2024 WL 4171204, at *3 (D.N.H. Sept. 12, 2024).  "In the deportation context, a final order of removal is a final order concluding that the alien is deportable or ordering deportation."  *Nasrallah v. Barr*, 590 U.S. 573, 581 (2020).  Courts across the country have concluded that NOERs are "final orders of removal for purposes of 18 U.S.C. § 3632(d)(4)(E)(i)."  *Batioja Cuero*, 2024 WL 4171204, at *3 (collecting cases); *see Harriot*, 2025 WL 384556, at *4 ("[T]he Court has found no authority for the proposition that expedited removal orders are not final for purposes of . . . the FSA, but it has found many instances of district courts across the country concluding that expedited orders of removal are final orders of removal for purposes of the FSA.").

Petitioner contends that he is not subject to a final order of removal or deportation that was issued by an immigration judge.  (*See* Pet. at 9.)  He also argues that the NOER is not final because he has not had a removal hearing.  (*See id.*; Reply at 5-6.)  Despite these arguments, Petitioner is subject to a final order of removal.  On December 28, 2023, ICE issued the NOER, which was personally served on Petitioner on December 29, 2023.  (ECF No. 8-2 at 1.)  The NOER states that "at the time of application for admission, [Petitioner was] not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the [INA]," nor did Petitioner possess "a valid unexpired passport, or other

suitable travel document, or document of identity and nationality as required under the

regulations issued by the Attorney General under section 211(a) of the Act." (*Id.* at 2.)  It further

states that "[b]ased upon . . . evidence presented during inspection or examination pursuant to

section 235 of the Act, and by the authority contained in section 235(b)(1) of the Act, [Petitioner

is] found to be inadmissible as charged and ordered removed from the United States." (*Id.* at 1;

*see* Lewis Decl. ¶ 6 ("Petitioner was found inadmissible under section 212(a)(7)(A)(i)(I) of the

[INA].").)  Furthermore, the NOER was entered by an immigration officer who determined that

Petitioner was inadmissible, and that determination was reviewed and approved by a supervisor,

(*see* ECF No. 8-2 at 1), as required for the order to be considered final, *see* 8 C.F.R.

§ 235.3(b)(7) ("Any removal order entered by an examining immigration officer pursuant to

section 235(b)(1) of the [INA] must be reviewed and approved by the appropriate supervisor

before the order is considered final.").

　　　　Thus, "[t]he NOER, which was entered by an immigration officer and approved by a

supervisor, is a final order of removal that prevents the BOP from applying FSA time credits as a

matter of law."  *Murillo-Cabezas*, 2024 WL 3638331, at *2; *see Harriot*, 2024 WL 2981150, at

*4 (to the same effect); *Duyzings v. Warden, FCI Fort Dix*, No. 23-CV-21574, 2024 WL

1406647, at *3 (D.N.J. Apr. 2, 2024) (petitioner not entitled to FSA ETCs because NOER was a

final order of removal that determined petitioner was inadmissible under § 235(b)(1) and ordered

petitioner to be removed).  With respect to Petitioner's argument that the order is not final

because he did not have a hearing, "NOERs . . . do not require a hearing or formal proceedings

before an immigration judge."  *Cargill v. Healy*, No. 24-CV-1280, 2025 WL 247993, at *4 (N.D.

Ohio Jan. 21, 2025); *see Murillo-Cabezas*, 2024 WL 3638331, at *2 (8 C.F.R. § 235.3(b)(2)(ii)

provides that "when an alien is found inadmissible under § 235(b)(1), the alien has no entitlement to hearings and appeals").

Petitioner also argues that the NOER should not be considered a final order because 8 C.F.R. § 1241.31 requires a decision by the Board of Immigration Appeals.  (Reply at 5-6.)  That regulation governs the finality of orders of deportation "made by [an] immigration judge in proceedings under 8 CFR part 1240."  8 C.F.R. § 1241.31.  But it does not apply to NOERs. Rather, the finality of NOERs – findings of inadmissibility by immigration officers – is governed by 8 C.F.R. § 235.3.  *See Harriot*, 2025 WL 384556, at *4 (under 8 C.F.R. § 235.3(b)(7), NOER considered "final" after an "appropriate supervisor" reviews and approves the NOER); *Gomez-Cuzme v. Birkholz*, No. 23-CV-1753, 2023 WL 4423602, at *3 (C.D. Cal. June 1, 2023) (to the same effect), *report and recommendation adopted*, 2023 WL 4422830 (C.D. Cal. July 7, 2023). Unlike orders of deportation, "NOER[s] are generally *not* subject to review by the Board of Immigration Appeals."  *Harriot*, 2025 WL 384556, at *4 (emphasis in original); *see* 8 C.F.R. § 253.3(b)(2)(ii) ("Except as otherwise provided in this section, such alien is not entitled . . . to an appeal of the expedited removal order to the Board of Immigration Appeals."); *Gomez-Cuzme*, 2023 WL 4423602, at *3 ("Expedited removal orders are generally not subject to administrative appeal.") (first citing 8 U.S.C. § 1225(b)(1)(C), then citing INA § 242(a)(2)(A)(i)).   Because "the FSA incorporates *all* provisions of immigration law," *Harriot*, 2025 WL 384556, at *4 (emphasis in original), determining whether an NOER is a "final order of removal" under the FSA is not governed by 8 C.F.R. § 1241.31, *see Gomez-Cuzme*, 2023 WL 4423602, at *3 (rejecting argument that § 1241.31 means NOER is not a final order of removal).

In his reply, Petitioner expounds on the asylum-seeking process for federal inmates, (*see* Reply at 7-8), but does not state that he is seeking asylum, and nothing in the record indicates

that he has made or desires to make such a request, or that he would have any basis for doing so. In any event, even if the Court construes Petitioner's reply as asserting a right to appear before an asylum officer, that request would not render the NOER nonfinal.  *See Batioja Cuero*, 2024 WL 4171204, at *5 ("The prospect that [Petitioner] might obtain relief in such [asylum] proceedings does not render his NOER nonfinal.") (collecting cases).[8]

Accordingly, the NOER is a "final order of removal" for the purposes of the FSA, and Petitioner is therefore not entitled to ETCs under that statute.  *See* 18 U.S.C. § 3632(d)(4)(E)(i).

### C.    Violation of Constitutional Rights

Finally, the Petition mentions in passing that Petitioner's due process rights were violated by the issuance of the NOER and DHS immigration detainer without the involvement of an immigration judge.  (*See* Pet. at 3, 9.)  In his reply, Petitioner contends that the "[d]eprivation of [his] ETC . . . violates [the] equal protection clause."  (Reply at 13.)  Because Petitioner is subject to a final order of removal, and thus is ineligible for ETCs, he does not have a liberty interest in early release that would support a due process claim.  *See Cheng v. United States*, 725 F. Supp. 3d 432, 440 (S.D.N.Y. 2024) ("Absent a legitimate expectation to the application of FSA time credits, [Petitioner's] Due Process claim must fail.") (collecting cases).  Inmates do not have a "constitutional right to early release or other less restrictive forms of custody."  *Harriot*, 2024 WL 2981150, at *5 (first citing *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979), then citing *Abed v. Armstrong*, 209 F.3d 63, 67 (2d Cir. 2000)); *see Abed*, 209 F.3d at 67 (while prisoners have a liberty interest in credits they have already earned, they do not have a "cognizable liberty interest" in the opportunity to earn or be eligible for good time credits)

---

[8] Petitioner's reply raises additional irrelevant and unsubstantiated arguments for the first time.  The Court has reviewed them, and to the extent this opinion does not explicitly address them, the Court has deemed them to be meritless.

(collecting cases); *Murillo-Cabezas*, 2024 WL 3638331, at \*2 n.2 (rejecting argument that the BOP's decision to not apply FSA ETCs to inmate subject to NOER violated his constitutional rights); *Gant v. King*, No. 23-CV-1766, 2023 WL 6910771, at \*3 (D. Minn. Oct. 19, 2023) ("[P]risoners do not have a protected liberty interest in the application of FSA time credits."). To the extent that Petitioner contends that his ineligibility for FSA ETCs violates the Equal Protection Clause under a selective enforcement or a class-of-one theory, those arguments also fail. *See Peguero-Carela*, 2024 WL 5301443, at \*7 ("[F]oreign national inmates with final orders of removal are not considered a suspect class."); *id.* (rejecting class-of-one theory where petitioner "failed to offer any basis to find that he has been intentionally treated differently from others similarly situated"); *Cheng*, 725 F. Supp. 3d at 439 (no equal protection violation because inmate did not show he was treated differently from similarly situated persons and because excluding inmates with final orders of removal from eligibility for FSA ETCs has rational basis).

Accordingly, Petitioner has failed to establish that his ineligibility to receive FSA ETCs violated his constitutional rights.

## IV.    CONCLUSION

For the foregoing reasons, the Petition is DENIED.  The Clerk of the Court is respectfully directed to close the case.

**SO ORDERED.**

Dated: February 28, 2025
        White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.